**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANA CORCIA, individually and on behalf of a class,<br><br>    Plaintiffs,<br><br>vs.<br><br>ASSET ACCEPTANCE, LLC,<br><br>    Defendant. | Case No. CV 13-06404 |

## ASSET'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiff's Memorandum of Law in Opposition to Asset's Motion to Dismiss ("Memo") confirms that her Second Amended Complaint ("Complaint") fails to state a claim for violations of the Fair Debt Collection Practices Act ("FDCPA") and should therefore be dismissed.  The Memo first introduces a new claim – that Asset failed to comply with a requirement in the Fair Credit Reporting Act ("FCRA") that a certain address be "clearly and conspicuously" disclosed.  Plaintiff then improperly asks the Court to use the FDCPA to enforce the FCRA because no private right of action exists under the applicable section of the FCRA.  The Memo then returns to Plaintiff's original claim -- the only claim contained in the Complaint -- and advances a bizarre and unreasonable interpretation of the Asset letter at issue.  Plaintiff argues that the letter impedes a consumer's ability to dispute an account with a credit reporting agency ("CRA") by misrepresenting that: (i) Asset is a CRA; (ii) consumers have no ability to dispute accounts with a CRA; and (iii) they should submit such disputes only to Asset.  In addition to admitting that the language is not material because it actually encourages a dispute with Asset, Plaintiff's interpretation either ignores or misinterprets the text, or adds words to the text, and seeks to impose a duty on Asset under the FDCPA which does not exist under that statute, namely, a duty to tell consumers they have a right to dispute an account with a CRA and to advise what method of dispute is preferable.  The correct interpretation of the *entire* letter, the interpretation Asset advanced and the interpretation consistent with the text and the FDCPA's and the FCRA's regulatory schemes, confirms that Asset made no false, deceptive or misleading statements.  Therefore, Asset's Motion should be granted and the Second Amended Complaint should be dismissed with prejudice.

## II.  ARGUMENT

A.  **Plaintiff's New Claim That Asset Did Not "Clearly And Conspicuously" Disclose The Direct Dispute Address Cannot Save Her Complaint From Dismissal.**

Plaintiff devotes five (5) pages to a claim that: is not part of her Complaint, for which there is no private right of action, and which lacks merit.  Specifically, Plaintiff claims the letter is misleading and deceptive under the FDCPA because it did not comply with a requirement of the FCRA to "clearly and conspicuously" disclose an address for disputing information about an Asset account on a credit report directly with Asset.  *See* Memo, pp. 9-14.  This claim (which is nothing more than an argument at this stage) cannot save the Complaint from dismissal for the following reasons.

First, a complaint may not be amended by a reference in a brief. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (court will not consider claims raised for first time in motion to dismiss); *accord Luna v. N. Babylon Teacher's Org.*, No. 13-cv-6308, 2014 U.S. Dist. LEXIS 49719, at *14 (E.D.N.Y. Apr. 7, 2014) ("[T]he Plaintiff may not amend her complaint through motion papers and the Court will not consider these newly raised allegations." (internal quotations and alterations omitted).  The Complaint contains no allegations in support of this new theory (that the letter violates the FDCPA because it violates the FCRA because it doesn't contain a "clear and conspicuous" address). There are no allegations addressing the manner in which the text is displayed or using the phrase "clearly and conspicuously".  Indeed, the theory in the Complaint is that certain language in the letter is prominent enough to mislead Plaintiff and others similarly situated in various regards.  It therefore is odd and contradictory for Plaintiff to now also claim that the same language was not "clearly and conspicuously" disclosed.

Because this claim is not pled in the operative Complaint, it should not be considered by the Court.

Second, even if this claim had been pled, it would not state a cause of action. The direct dispute obligations of a furnisher, such as Asset, are located in Section 623(a) of the FCRA. 15 U.S.C. § 1681s-2(a)(8)(D). The implementing regulations, 16 C.F.R. Part 660.4(c)(2), require that a specific address to receive direct disputes be disclosed "clearly and conspicuously." There is, however, *no* private right of action for a violation of Section 623a of the FCRA, *Longman v. Wachovia*, 702 F.3d 148, 151 (2d Cir., 2012), a point Plaintiff concedes. *See* Memo, p. 18.

Nor can Plaintiff bootstrap a claim under the FDCPA that she has no right to bring under the FCRA. The FDCPA creates its own rules and requirements; it does not operate as "an enforcement mechanism for other rules of state and federal law." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007); *see also Carlson v. First Revenue Assur.*, 359 F.3d 1015, 1018 (8th Cir. 2004) (the FDCPA does not convert every violation of a state debt collection law into a federal violation; only those collection activities are false, deceptive, or misleading constitute FDCPA violations); *Myers v. Midland Credit Mgmt.*, 2014 U.S. Dist. LEXIS 32349, at *17 (M.D. Pa. Mar. 13, 2014) (violation of the FCRA is not a *per se* violation of the FDCPA). There is no cause of action under the FDCPA for not "clearly and conspicuously" disclosing the direct dispute address and Plaintiff cites nothing to the contrary. Instead, Plaintiff argues that the letter is misleading and deceptive because the address is not "clearly and conspicuously" disclosed. In other words, she claims Asset violated the FDCPA because it violated the FCRA. Such an attempt to make an end-run around the fact that there is no private right of action under the applicable FCRA section cannot be countenanced.

3

*Arroyo v. Solomon & Solomon, P.C.*, 2001 U.S. Dist. LEXIS 21908, at *6, 16-18 (E.D.N.Y. Nov. 7, 2001), does not support Plaintiff's claim. *Arroyo* did not hold that because the defendant violated the Higher Education Act it therefore also automatically violated the FDCPA. Instead, the decision turned on a statement that misrepresented the law—the debt collector "violated the FDCPA by misleading the plaintiff as to her rights under the HEA." *Id.* Thus, even assuming that this claim was made in the Complaint, and the notice was not clearly and conspicuously drafted, to state an FDCPA claim, Plaintiff would need to show that the violation of the FCRA constituted a false, deceptive or misleading representation in connection with the collection of a debt, which she has not done.

Lastly, there was no FCRA violation because the address for a direct dispute was "clearly and conspicuously" disclosed. In determining whether language is clear and conspicuous, a court must consider:

> (1) the location of the notice within the document; (2) the type size used within the notice as well as the type size in comparison to the rest of the document; and (3) whether the notice is set off in any other way—spacing, font style, all capitals, etc.

*Schwartz v. Goal Fin. LLC*, 485 F. Supp. 2d 170, 178 (E.D.N.Y. 2007) (citing *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 731 (7th Cir. 2004)). Asset placed the language and address at issue in its own paragraph, in the same size font as the surrounding text, on the first page. This disclosure was clear and conspicuous in that an ordinary person receiving the letter would have read the entire page, including the dispute notice; indeed, Plaintiff saw it—she filed suit over it. This is a far cry from the facts of the cases Plaintiff cites in which the defendants: buried the notice in the fine print ten pages into a multipage document[1]; undermined the importance of the notice by leaving it in ordinary font while emphasizing surrounding paragraphs with larger,

---

[1] *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009).

boldface font[2]; or required the plaintiffs to sign inherently contradictory documents.[3]

**B.    The Letter Does Not State, Suggest Or Falsely Imply That Credit Reporting Disputes Must Be Made Only to Asset, Or That Disputing With Asset Is "Better" Than Informing A CRA Of An Alleged Inaccuracy.**

Plaintiff does not challenge Asset's point that it has no obligation under the FDCPA (or any law for that matter) to advise consumers that they have the right to dispute what appears on their credit report with a CRA. Nor does she argue that the letter falsely states that the only way to dispute an inaccuracy about an Asset account on a credit report is to send a letter to Asset. Instead, Plaintiff's claim boils down to one word—"should". Memo. p. 15. Recall that the sentence at issue states: "We may report information about your account to the credit bureaus. Correspondence concerning inaccuracies and disputes relating to your credit report **should** be sent to P.O. Box 1630 Warren, MI 48090-1630" (emphasis added). Plaintiff claims the word "should" implies that one can *only d*ispute a report by contacting Asset, or that this is the preferable method of dispute. Plaintiff's interpretation improperly assumes that the least sophisticated consumer possesses no information whatsoever about CRAs, or receives no information from such agencies regarding disputes when obtaining their credit reports. As set forth below, the Second Circuit rejects "bizarre or idiosyncratic interpretations of collection notices" that ignore "rudimentary knowledge about the financial world", *Clomon v. Jackson,* 988 F.2d 1314, 1318-20 (2d Cir. 1993), such as Plaintiff's which would lead to the strange result of the FDCPA prohibiting not only abusive or unfair behavior, but also letters that encourage consumers to dispute their accounts.

A plain reading of the entire letter confirms that the challenged language instructs the

---

[2] *Stevenson v. TRW Inc.*, 987 F.2d 288, 295-96 (5th Cir. 1993).
[3] *Rand Corp. v. Moua*, 559 F.3d 842, 845-46 (8th Cir. 2009).

consumer that any letter to Asset about the credit reporting of the account "should" be sent to P.O. Box 1630 , rather than the other Asset addresses identified in Exhibit A, which are for other types of communications.[4] In other words, Asset was directing the consumer to send the letter to the specific address Asset designated for direct credit reporting disputes under the FCRA.

The Second Circuit recognizes that the hypothetical least sophisticated consumer possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences. *Clomon v. Jackson,* 988 F.2d 1314, 1318-19 (2d Cir. 1993). This consumer would carefully read the whole letter and would understand that letters to Asset about the credit reporting of her Asset account should be sent to PO Box 1630 and not to any other Asset address identified in the letter. They would not, as Plaintiff alleges, interpret it to mean Asset was providing legal advice that consumers can only dispute the credit reporting of her account with Asset, that they cannot dispute the account with a CRA, or that disputing with Asset offers more protection to consumers than disputing the account with a CRA.[5] The least sophisticated consumer with rudimentary knowledge of the financial world also knows that CRAs exist to handle such disputes and, as Plaintiff correctly concludes, the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB") serve to remind consumers of this very fact. Memo, p. 18.

---

[4] P.O. Box 2036 is identified in the upper right hand corner; P.O. Box 1658 is identified in the second to last full paragraph of the Letter and P.O. Box 2042 is identified in the bottom left hand corner.

[5] As set forth in Asset's opening brief (pp. 12-13), Plaintiff's reliance on *Easterling v. Collecto, Inc*., 692 F.3d 229 (2d Cir. 2012), is misplaced. The letter there told the consumers that their account was ineligible for bankruptcy discharge when it may not have been. Asset's letter does not say consumers cannot dispute accounts with CRAs or that they are better off disputing with Asset than a CRA, or any other misstatement of law

Nor does it help Plaintiff that she can say, with 20/20 hindsight, how the letter could have been better written. (Memo, p. 15). Just because there is a better way to say something does not mean that letter as written violates the FDCPA. The FDCPA "does not require clarity in all writings" and "a rule against trickery differs from a command to use plain English and write at a sixth-grade level." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007); *see also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (reaffirming that the least sophisticated consumer "is neither irrational nor a dolt."). Plaintiff's suggestions may be helpful but they do not state a claim for an FDCPA violation.

C.   **Nothing In The Letter Is Materially False, Deceptive Or Misleading.**

Asset's opening brief argued that to the extent the Court concluded that the letter contained an inaccurate, misleading or deceptive statement, Plaintiff must still show that statement was material to state a claim, a burden which she had not satisfied. Brief, pp. 13-14. Plaintiff agrees that she must plead and show a *material* false, deceptive or misleading statement to sustain her FDCPA claim. Memo, p. 21. She also concedes that to establish materiality she must show the letter "could impede a consumer's ability to respond to or dispute collection". *Gabrielle v. Am. Home Mortg. Servicing, Inc.,* 503 F. App'x 89, 94 (2d Cir. 2012). Yet her attempt to establish materiality fails for the following reasons.

Plaintiff claims that failing to "clearly and conspicuously" disclose the address of the P.O. Box for direct disputes "goes to the heart of a consumer's ability to dispute the debt." Memo, p. 21. As set forth above, the Complaint contains no allegations regarding the manner in which Asset disclosed the address. And, even if she had pled those facts, they would not establish materiality. Far from impeding a consumer's ability to dispute an account, Asset's letter actually encourages a dispute. The third paragraph of the letter discloses the consumer's

7

rights under 15 U.S.C. § 1692g to dispute the account.[6] The language Plaintiff challenges explains how to directly dispute a problem with the credit reporting of the account. And if they have any problem with the way the account is being collecting, Asset disclosed a specific address, phone number and email address to contact it *or* the FTC.

Plaintiff also claims materiality because disputing a debt with a CRA "is a more powerful way of disputing a debt than by direct dispute." Memo, p. 22. This argument fails the materiality test as a matter of law. Materiality is shown when a collector "impedes a consumer's ability to dispute the debt." *Gabriele*, 503 F.App'x at 94. Yet, far from impeding the ability to dispute the debt ,the letter affords consumers ample opportunity to dispute it, as shown above. The authority Plaintiff cites (Memo, pp. 21-22) does not address whether disputing an account with a CRA is a "superior" or "more powerful" dispute method than notifying the debt collector or furnisher; rather, it discusses only whether furnishing information to a CRA is collection activity regulated by the FDCPA. Nor should the Court give any credence to Plaintiff's rank speculation that disputing with a CRA is more powerful or better because there is a private right of action for handling those disputes as opposed to a direct dispute. Memo, p. 18. Furnishers, such as Asset, are exposed to supervisory authority by the CFPB and face significant potential exposure in penalties and fines in suits filed by the CFPB and the FTC. *See, e.g.*, Joint Consent Order from *In the Matter of American Express Centurion Bank Salt Lake City, Utah*, FDIC-12-315b, FDIC-12-316b, 2012-CFPB-0002 (October 1, 2012) (CFPB action in which American Express agreed to repay $85 million to consumers for, among other things, failing to tell consumer reporting agencies that consumers had disputed their accounts); Stipulated Final Judgment from *United States of America v. Telecheck Services, Inc.*, No. 14-cv-0062 (D.D.C.

---

[6] See pp. 7-8 of Asset's Opening Brief for a discussion of that section of the FDCPA.

Jan. 17, 2014) (FTC action in which Telecheck agreed to pay $3.5 million dollar fine for violating the FCRA).

**D.**     *Asset Did Not Violate Section 1692e (16) of the FDCPA.*

The FDCPA prohibits debt collectors from falsely representing or implying that they operate a CRA.  15 U.S.C. § 1692e(16).  Plaintiff claims that Asset violated this provision because the least sophisticated consumer would interpret the challenged language to mean that a CRA operated P.O. Box 1036 and that the P.O. Box had no association with Asset, or Asset acts as a CRA (Memo, pp. 19-21).  How Plaintiff can read the entire letter and find a violation of 1692e(16) defies logic.

Collection letters must be read in their entirety.  *McStay v. I.C. Sys., Inc.,* 308 F.3d 188, 191 (2d Cir. 2002).  A plain reading of the *entire* letter reveals that Asset did not represent, suggest or imply it was a CRA.  Asset represented itself to be collecting a debt -- the letter introduced Asset as the entity that now owns Plaintiff's delinquent Capital One account and provided information about the account.  The letter provided an address for Asset in Warren, Michigan at the top right hand corner.  The letter disclosed that it was from a "debt collector" and was "an attempt to collect a debt."  Asset then distinguished itself from a CRA by stating "[w]e may report information about your account to the credit bureaus".  Through this and the next sentence of the letter, Asset unmistakably and unambiguously informed Plaintiff that it is a furnisher of credit reporting information and not a CRA, and provided a P.O. Box address in Warren, Michigan to which Plaintiff could send Asset correspondence concerning any problem with the information.  That Asset did not say write "to us" at P.O. Box 1630 is not material when the location of the P.O. Box is in Warren, Michigan, the letter identifies two other addresses for

9

Asset in Warren and least sophisticated consumer can easily determine that Asset's headquarters are in Warren, Michigan.

For all of these reasons, Asset did not represent itself as or imply it was acting as a CRA and thus did not violate Section 1692e(16). Here too, Plaintiff's interpretation, which fails to consider the entire letter, is precisely the type of "bizarre or idiosyncratic interpretation of collection notices " the Second Circuit prohibits. *Clomon,* 988 F.2d at 1320; *McStay*, 308 F.3d at 191.

### III. CONCLUSION

Asset respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Second Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: June 16, 2014      By: /s/Jill M. Wheaton
Jill M. Wheaton (JW8944)
DYKEMA GOSSETT PLLC
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Direct Dial: 734-214-7629
Fax: 734-214-7696
JWheaton@dykema.com

R. David Lane
Marshall Dennehey Warner Coleman & Goggin
Wall St. Plaza
88 Pine St., 21st Floor
New York, NY  10005-1801
Direct Dial: 212-376-6413
Fax: 212-376-6490
RDLane@MDWCG.com

*Attorneys for Defendant
Asset Acceptance, LLC*

10

## CERTIFICATE OF SERVICE

I certify that on June 16, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties by operation of the Court's electronic filing system.

Dated:   June 16, 2014

By: /s/Jill M. Wheaton
Jill M. Wheaton
Dykema Gossett PLLC
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Direct Dial: 734-214-7629
Direct Fax: 734-214-7696
Email: JWheaton@dykema.com

*Attorneys for Defendant*
*Asset Acceptance Capital Corp.*