UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────

№ 13-CV-6404 (JFB)(GRB)
───────────────────

CHANA CORCIA,

Plaintiff,

VERSUS

ASSET ACCEPTANCE, LLC,

Defendant.
───────────────────

**MEMORANDUM AND ORDER**
July 22, 2014
───────────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff Chana Corcia ("Corcia" or "plaintiff") brings this putative class action on behalf of herself and other individuals similarly situated,[1] alleging that defendant Asset Acceptance, LLC ("Asset" or "defendant") violated the Fair Debt Collection Practices Act ("FDCA"), 15 U.S.C. §§ 1692 *et seq.* Plaintiff's claims concern two sentences in a letter she received from Asset, dated June 19, 2013: "We may report information about your account to credit bureaus. Correspondence concerning inaccuracies and disputes relating to your credit report should be sent to: P.O. Box 1630 Warren, MI 48090-1630." Plaintiff contends that this statement was false, deceptive, or misleading, in violation of 15 U.S.C. § 1692e. Asset moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that none of the disputed language is false, misleading, or deceptive. For the reasons set forth in detail herein, the Court grants Asset's motion to dismiss, concludes that leave to amend would be futile, and dismisses the complaint with prejudice.

I.   BACKGROUND

A.   Factual Background

The Court takes the following facts from the Second Amended Complaint ("SAC"). The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party. In addition, the Court takes judicial notice of the letter from Asset, which is attached to the SAC.[2]

───────────────────

[1] Plaintiff has not yet moved for class certification pursuant to Federal Rule of Civil Procedure 23.

[2] As discussed *infra*, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150,

Plaintiff alleges that she is a "consumer" and that Asset is a "debt collector," as defined by the FDCPA. (SAC ¶¶ 5, 9–10.) On June 19, 2013, plaintiff received a letter from Asset, which was seeking to collect a financial obligation plaintiff incurred for personal, family, or household purposes—a "debt" as defined by the FDCPA. (*Id.* ¶¶ 11–14.) The letter, which lists an address of PO Box 2036, Warren, MI 48090-2038 in the upper-right corner, reads, in relevant part:[3]

> Re: CAPITAL ONE BANK NATIONAL ASSOCIATION . . .
> Creditor to Whom The Debt is Owed: Asset Acceptance, LLC
> Current Balance: $789.11
> Date of Last Payment to Original Creditor: September 5, 2012
>
> Dear Chana M Corcia:
>
> Asset Acceptance, LLC purchased and now owns the account referenced above. We would like to work with you to resolve this debt. Therefore, communications and payments regarding this account should not be made to Capital One Bank National Association/Neiman Marcus. Please call the toll free number listed below for additional information and refer to the payment coupon below for payment information. . . .
>
> Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume that the debt is valid. If you notify us of any such dispute in writing within 30 days from receiving this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor if different from the current creditor.
>
> **This is an attempt to collect a debt and any information obtained will be used for that purpose. . . .**
>
> <u>We may report information about your account to credit bureaus. Correspondence concerning inaccuracies and disputes relating to your credit report should be sent to: P.O. Box 1630 Warren, MI 48090-1630</u>. . . .
>
> If you have a complaint about the way we are collecting this debt, please write to us at PO Box 1658, Warren, MI 48090-1658 . . . .

(Letter, SAC Ex. A (underline added).)[4]

Plaintiff claims that the underlined sentences violate 15 U.S.C. §§ 1692e(10) and (16). (*See* SAC ¶ 30.) Specifically, she alleges that Asset violated section 1692e(10) because, "[u]pon reading the collection letter, the least sophisticated consumer would refrain or might very well refrain from disputing the debt with the credit reporting agencies," and "the collection letter instructs the debtor to choose the inferior method of disputing inaccuracies on a consumer's credit report by instructing the consumer to dispute the information with the furnisher rather than with the credit reporting agencies." (*Id.* ¶¶ 21, 23.) She

---

157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

[3] Any omissions are irrelevant.

[4] Asset admits that it owns PO Box 1630.

2

alleges that Asset violated section 1692e(16), because Asset did not say it owns PO Box 1630, "[a] consumer may believe that the address belongs to a consumer reporting agency" or "believe that Asset Acceptance is both a debt collector and a consumer reporting agency." (*Id.* ¶¶ 25–27.)

B. Procedural Background

Plaintiff filed the original complaint on November 19, 2013, and an amended complaint on December 24, 2013. Defendant answered the amended complaint on January 21, 2014. Plaintiff filed her second amended complaint on March 21, 2014. Defendant moved to dismiss on May 2, 2014. Plaintiff opposed on June 2, 2014. Defendant replied on June 16, 2014. Plaintiff submitted a letter addressing arguments in the reply and requesting leave to amend on June 18, 2014. The Court held oral argument on July 21, 2014. The matter is fully submitted.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

The Court notes that, in adjudicating this motion, it may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken

3

under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

### III. DISCUSSION

Defendant moves to dismiss, arguing that plaintiff does not state a claim for relief under the FDCPA because (1) there is nothing false, misleading, or deceptive about Asset informing consumers that it may send information about their account to the credit reporting agencies, while also providing the specific address to which the consumer should write to Asset about inaccuracies or disputes; (2) Asset has not falsely represented or implied that it is a credit reporting agency; and (3) even assuming any of the disputed language is false, deceptive, or misleading, none of it is a material misrepresentation actionable under the FDCPA. For the reasons set forth below, the Court concludes, as a matter of law, that none of the disputed language is false, deceptive, or misleading to the least sophisticated consumer. Therefore, as explained *infra*, the Court does not decide whether to incorporate a materiality requirement into the analysis.

#### A. Relevant Statutory Provisions

#### 1. Section 1692e of the FDCPA

Congress created the FDCPA to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a); *see Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2003). Finding that such practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. §§ 1692(a), 1692(e).

15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." To determine whether a debt collector's communication violates § 1692e, courts apply an objective test based on the understanding of the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 359 (E.D.N.Y. 2013). According to the Second Circuit, the "least sophisticated consumer" standard is "an objective analysis that seeks to protect the naive from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco*, 412 F.3d at 363 (internal quotation marks and citations omitted). However, the Second Circuit has emphasized that "'even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Id.* (quoting *Clomon*, 988 F.2d at 1318–19).

A communication is considered false, deceptive, or misleading to the "least sophisticated consumer" if it is "open to more than one reasonable interpretation, at least one of which is inaccurate."[5]

---

[5] Several district courts in this Circuit incorporate a materiality prong into this analysis, *see, e.g.*, *Vu*, 293 F.R.D. at 360 (citing *Fritz v. Resurgent Capital Servs., L.P.*, 955 F. Supp. 2d 163, 170–71 (E.D.N.Y. 2013)), relying on the Second Circuit's apparent approval of the materiality requirement in an

4

*Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012). This is a question of law. *Shami v. Nat'l Enters. Sys.*, 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012). As such, the Court can resolve whether a communication violates § 1692e on a motion to dismiss. *See, e.g.*, *Diaz v. Residential Credit Solutions, Inc.*, 965 F. Supp. 2d 249, 256 (E.D.N.Y. 2013) (citing *Rozier v. Fin. Recovery Sys.*, 10-CV-3273 (DLI)(JO), 2011 WL 2295116, at *2 (E.D.N.Y. June 7, 2011)).

2. Section 1692g(a) of the FDCPA

15 U.S.C. § 1692g(a) sets forth the required disclosures for a debt collector's initial communication to a consumer. Specifically, the debt collector must include (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that the consumer may dispute the validity of the debt within thirty days after receipt of the initial communication, lest the debt be assumed valid by the debt collector; (4) a statement that if the consumer notifies the debt collector that the consumer is disputing the debt, the debt collector must provide verification of the debt; and (5) a statement that, if the consumer requests the name and address of the original creditor in writing within thirty days of receiving the initial communication, the debt collector must provide it. 15 U.S.C. § 1692g(a). Asset's letter included these disclosures.

---

unpublished opinion, *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Pursuant to *Gabriele*, "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection," are material misrepresentations that violate the FDCPA. 503 F. App'x at 94. This Court, however, need not decide whether to incorporate the materiality requirement in this case, because, as set forth below, the Court concludes that Asset's letter was not false, deceptive, or misleading in the first instance as a matter of law.

3. Fair Credit Reporting Act

Plaintiff's claims also implicate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, which "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information" and "imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. §§ 1681(b), 1681s–2).

Section 1681s–2 of the FCRA imposes duties upon furnishers, such as Asset, of information to credit reporting agencies. *See* 15 U.S.C. § 1681s–2. Consumers have the right to dispute any information reported to a credit reporting agency. *See id.* § 1681g(c)(1)(B)(iii); *see also id.* §§ 1681i(a)(1)(A), 1681s–2(a)(8). If a consumer files a dispute with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate. *See id.* §§ 1681i(a)(1)(A), 1681s–2(b). If a consumer files a dispute directly with the furnisher, the furnisher only has a duty to investigate in certain circumstances established by regulation. *See id.* § 1681s–2(a)(8); 16 C.F.R. § 660.4; *see also Longman*, 702 F.3d at 151 (citing *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35 & n.8 (1st Cir. 2010)). A direct dispute must be sent "directly to the [furnisher] at the address specified by the [furnisher] for such notices." 15 U.S.C. § 1681s–2(a)(8)(D).[6] If a

---

[6] Pursuant to the regulations promulgated by the Federal Trade Commission ("FTC"), 16 C.F.R. § 660.4(c), a furnisher need not provide a specific address for direct disputes. If the furnisher does provide a specific address, however, the address must be specified "clearly and conspicuously":

5

consumer submits a direct dispute, the furnisher must investigate the dispute, report the findings to the consumer within thirty days, notify the consumer reporting agency of any inaccurate information, and provide the corrected information to the agency if necessary. *Id.* § 1681–2(a)(8)(E). No private cause of action exists for violations of § 1681s–2(a), because "the statute plainly restricts enforcement of that provision to federal and state authorities." *Longman*, 702 F.3d at 151; *see* 15 U.S.C. § 1681–s(d) (providing that the provision "shall be enforced exclusively" by government officials); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 426–27 (S.D.N.Y. 2010).[7]

### B. Violation of Section 1692e(16)

Plaintiff alleges that Asset violated 15 U.S.C. § 1692e(16), which prohibits the "false representation or implication that a debt collector operates or is employed by a consumer reporting agency." According to plaintiff, because the letter does not specify that Asset owns PO Box 1630, unlike the other addresses listed therein, "[a] consumer may believe that the address belongs to a consumer reporting agency," or "believe that Asset Acceptance is both a debt collector and a consumer reporting agency." (SAC ¶¶ 25–27.) Asset contends that the claim must be dismissed because a plain reading of the entire letter reveals that Asset did not state, imply, or suggest that it is a credit bureau. The Court agrees with Asset.

The Second Circuit presumes that a debt collection "letter should be read in its entirety." *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (explaining, *inter alia*, that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the

---

A furnisher is required to investigate a direct dispute only if a consumer submits a dispute notice to the furnisher at:

(1) The address of a furnisher provided by a furnisher and set forth on a consumer report relating to the consumer;

(2) An address clearly and conspicuously specified by the furnisher for submitting direct disputes that is provided to the consumer in writing or electronically (if the consumer has agreed to the electronic delivery of information from the furnisher); or

(3) Any business address of the furnisher if the furnisher has not so specified and provided an address for submitting direct disputes under paragraphs (c)(1) or (2) of this section.

[7] Consumers may, however, pursue private claims for willful or negligent noncompliance with Section 1681s–2(b). As Judge Gardephe of the Southern District of New York has summarized:

"Unlike . . . Subsection (a), [however,] . . . courts have generally allowed consumers to pursue private claims for 'willful or negligent noncompliance with Section 1681s–2(b).'" *Kane v. Guar. Residential Lending, Inc.*, No. 04–CV–4847 (ERK), 2005 WL 1153623, at *5 (E.D.N.Y. May 16, 2005) (quoting *O'Diah v. N.Y.C.*, No. 02 Civ. 274(DLC), 2002 WL 1941179, at *13 (S.D.N.Y. Aug. 21, 2002) (collecting cases)). "However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice from a credit reporting agency of a consumer's dispute." *Id.* at *4 (emphasis in original). "A plaintiff proceeding under 1681s–2(b) is required to show that the furnisher was told by a credit reporting agency that the consumer's information was disputed, as opposed to being told by the consumer directly." *Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456(RC)(THK), 2006 WL 5157678, at *15 (S.D.N.Y. Feb. 28, 2006), *report and recommendation adopted*, No. 05 Civ. 3456(KMW), 2007 WL 2049566 (S.D.N.Y. July 13, 2007).

*Mendy v. JP Morgan Chase & Co.*, No. 12 Civ. 8252(PGG), 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014).

back"). Thus, to determine whether the least sophisticated consumer reasonably could interpret the disputed text as representing or implying that Asset is a credit bureau, *see Easterling*, 692 F.3d at 233, the Court must consider the disputed language in the context of the entire letter.

In the letter, Asset introduces itself as the creditor that owns plaintiff's Capital One Bank debt; discloses (in bold letters) that the letter is "an attempt to collect a debt" and that "any information obtained will be used for that purpose"; directs plaintiff to notify Asset in writing within thirty days if she disputes the validity of the debt; states that Asset may (not will) report the information to credit bureaus; and provides information to plaintiff about who to contact if she has concerns with the way Asset is collecting her debt. None of this language reasonably could imply to even the least sophisticated consumer that Asset is anything other than a debt collector. Moreover, given this unambiguous, prominent language, it would be irrational for the least sophisticated consumer to conclude that PO Box 1630 belongs to a credit bureau, that Asset is a credit bureau, or that Asset intended to deceive plaintiff as to its nature, especially because Asset clearly indicated that it owned two other addresses in Warren, Michigan. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d at 135 ("The hypothetical least sophisticated consumer does not have 'the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer,' but is neither irrational nor a dolt. . . . [T]his Court has been careful not to conflate lack of sophistication with unreasonableness." (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 3, 34 (2d Cir. 1996))).

Plaintiff's contrary interpretations are the types of "bizarre or idiosyncratic interpretation[s]" that the Court need not accept, *Greco*, 412 F.3d at 363, and the Court holds that the disputed language does not violate section 1692e(16). Accordingly, the Court grants Asset's motion to dismiss the 15 U.S.C. § 1692e(16) claim.

### C. Violation of the FCRA and 16 C.F.R. § 660.4(c)

In response to Asset's argument that the FCRA requires it to provide consumers with a specific address for direct disputes, plaintiff raises a new theory of liability: Asset violated the FDCPA because it did not "clearly and conspicuously" specify that PO Box 1630 is a direct dispute address, as required by 16 C.F.R. § 660.4(c), and, thus, consumers could be deceived into believing they could send a dispute to any Asset business address. Asset objects to the assertion of the "clear and conspicuous" claim at this juncture; argues that the claim would be futile because there is no private right of action for a violation of 15 U.S.C. § 1681s–2(a)(8)(D), and plaintiff cannot bootstrap a claim for such a violation under the FDCPA; and argues that the address was clearly and conspicuously disclosed. In her surreply, plaintiff requests leave to amend her complaint to include these allegations (thus recognizing that these allegations were not included in the SAC).

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a); a motion to amend should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay,

7

bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). For the following reasons, the Court denies leave to amend on futility grounds, because this theory of liability fails as a matter of law.

First, there is no private right of action for a violation of the direct dispute obligations of a furnisher under the FCRA and its implementing regulations, including the requirement that the direct dispute address be specified "clearly and conspicuously," if at all. *E.g.*, *Longman*, 702 F.3d at 151. Only those collection activities that use "false, deceptive, or misleading representation or means" violate the FDCPA. *See* 15 U.S.C. § 1692e. Under plaintiff's theory, however, a consumer could bring a § 1692e claim any time a furnisher does not clearly and conspicuously specify a direct dispute address, if the furnisher chooses to specify such an address in the first place. Per plaintiff, Asset's alleged noncompliance with 16 C.F.R. § 660.4(c), in itself, makes Asset's letter false, deceptive, or misleading. This is incorrect. Plaintiff cites to no authority establishing a cause of action under the FDCPA for not "clearly and conspicuously" disclosing the direct dispute address, much less any authority that supports the circumvention of the prohibition on a private right of action under 15 U.S.C. § 1681s–2(a) in this case.

*Arroyo v. Solomon & Solomon, P.C.*, No. 99-CV-8302 (ARR), 2001 WL 1590520 (E.D.N.Y. Nov. 16, 2001), is not to the contrary. There, the plaintiff alleged that the defendant violated her rights under 15 U.S.C. § 1692e when its agent misrepresented that the plaintiff had no choice but to pay an amount greater than she could afford, when in fact, under the Higher Education Act ("HEA"), the plaintiff was required only to make monthly payments that were reasonable and affordable considering her financial circumstances. *Id.* at *2. The defendant argued that the plaintiff could not bring a claim under the FDCPA, because the HEA does not expressly allow a private right of action to vindicate rights under the HEA. *Id.* at *4. The court disagreed. It held that the plaintiff stated a cause of action under the FDCPA, because she alleged that the defendant "directly violated the FDCPA by misrepresenting the nature of her obligation to repay her student loan"—that is, "by misleading the plaintiff as to her rights under the HEA" in connection with the collection of the debt. *Id.* at *5–6. Thus, plaintiff's claim was not based on a violation of the HEA, but on the language in the letter. Here, in contrast, plaintiff's allegation that the failure to "clearly and conspicuously" establish PO Box 1630 as the direct dispute address would deceive consumers into believing that they can dispute and be afforded the protections of the FCRA if they send a dispute to any Asset business address conflates the alleged violation of the FTC regulation with the alleged violation of the FDCPA, improperly bootstrapping the former under the latter.

Second, even if there were a viable cause of action, the claim fails as a matter of law because Asset "clearly and conspicuously" disclosed its direct dispute address. The FCRA does not define the term "clear and conspicuous." Courts therefore have drawn from the Uniform Commercial Code ("UCC") and the Truth in Lending Act ("TILA") for guidance, and they accordingly

8

consider "(1) the location of the notice within the document; (2) the type size used within the notice as well as the type size in comparison to the rest of the document; and (3) whether the notice is set off in any other way-spacing, font style, all capitals, etc." *Schwartz v. Goal Fin. LLC*, 485 F. Supp. 2d 170, 178 (E.D.N.Y. 2007) (citing *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 731 (7th Cir. 2004)). "'In short, there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it.'" *Id.* (quoting *Cole*, 389 F.3d at 731). Thus, for purposes of the FDCPA, the Court must consider whether the least sophisticated consumer would have noticed and understood the disclosure. *See Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009) (in TILA case, stating that "[c]lear and conspicuous disclosures . . . are disclosures that a reasonable cardholder would notice and understand").

Here, Asset placed the language at issue in its own paragraph and in the same size font as the surrounding text. The font style is distinct from the other disclaimers. Therefore, because the least sophisticated consumer undoubtedly would have seen the direct dispute address and, as noted *supra*, the only reasonable interpretation of this text is that Asset owns PO Box 1630, the Court concludes that the disclosure was "clear and conspicuous," in compliance with 16 C.F.R. § 660.4(c), and that it was not false, misleading, or deceptive under 15 U.S.C. § 1692e. *Compare Schwartz*, 485 F. Supp. 2d at 178–79 (concluding that disclosure was clear and conspicuous where text of disclosure statement, while smaller than that on front side of solicitation, was not disproportionately small compared to surrounding text, and text on front side that signaled to reader that disclosure text was on reverse was set off in box, used same font as that on rest of page, and capitalized words "prescreen" and "opt-out notice"), *with Barrer*, 566 F.3d at 892 (concluding that disclosure was not clear and conspicuous, such that recipient would notice and understand it, because it was buried ten pages into a multipage document), *and Cole*, 389 F.3d at 731 (finding disclosure statement not clear and conspicuous where it was "disproportionately small compared to the surrounding text," "is the smallest text on a page filled with larger type," and "does nothing to draw the reader's attention to the material").

Accordingly, because it would be futile to state a claim based on a violation of 16 C.F.R. § 660.4(c)'s "clear and conspicuous" requirement, the Court denies plaintiff's request for leave to amend.

D. Violation of Section 1692e(10)

Plaintiff, focusing on Asset's use of the word "should," alleges that Asset violated 15 U.S.C. § 1692e(10) because the least sophisticated consumer could reasonably interpret the letter to mean that account disputes cannot be sent to the credit reporting agencies, or that the best way to dispute the debt is to write to PO Box 1630. Asset contends that the claim should be dismissed because (1) the letter complies with the FCRA's disclosure requirements and is accurate; (2) Asset never informed plaintiff that the only way to dispute the accuracy of the account is through Asset or that she could not dispute the accuracy of her account with the credit bureaus; and (3) the FDCPA does not obligate Asset to notify consumers of their right to dispute an account with the credit reporting agencies. In short, Asset argues that no reasonable interpretation of the letter would render it false or deceptive, and it does not in any way inhibit a consumer's ability to exercise her legal rights and dispute the account. The Court agrees with Asset.

9

15 U.S.C. § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." "The fact that a notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10)." *Barrientos v. Law Offices of Mark L. Nichter*, 76 F. Supp. 2d 510, 513 (S.D.N.Y. 1999).

Plaintiff does not dispute that no law obligates Asset to advise consumers of their right to dispute an account with the credit reporting agencies. She also does not allege that the letter falsely states that the only way or best way to dispute an inaccuracy is to contact Asset. Instead, she argues that, by virtue of the word "should," the least sophisticated consumer could interpret the sentence to mean that the proper or only way to dispute an inaccuracy is to write directly to Asset. She contends that the letter's "capacity to discourage debtors from fully availing themselves of their legal rights renders its misrepresentations exactly the kind of abusive debt collection practice that the FDCPA was designed to target." (SAC ¶ 22.) This theory of liability arguably would require any debt collector that chooses to include a direct dispute address in a letter to parse its language even more finely or notify the consumer of her right to dispute an account through the credit reporting agencies in order to avoid liability under the FDCPA. The FDCPA does not impose such a burden, which ignores that even the least sophisticated consumer has "rudimentary information about the world." *Clomon*, 988 F.2d at 1319. Instead, the least sophisticated consumer is assumed to know about credit reporting agencies, which also would provide her with relevant information when she requests a credit report.[8]

Plaintiff's reliance on *Easterling* is misplaced. There, the Second Circuit considered whether the hypothetical least sophisticated consumer could reasonably interpret a collection letter's statement that "Your account is NOT eligible for bankruptcy discharge" as representing, incorrectly, that the debtor is completely foreclosed from seeking bankruptcy discharge of the debt in question. 692 F.3d at 234. The court concluded that this representation was "literally false," particularly because the plaintiff "at all times fully retained her right to seek bankruptcy discharge of her debt"; and also "fundamentally misleading in that it suggests that the debtor has no possible means of discharging her student loan in bankruptcy." *Id.* at 235. Here, in contrast, Asset's letter factually was accurate, and it never told plaintiff that she could not contact a credit reporting agency or dispute her account through any other means. The fact that Asset used the word "should" in order to designate PO Box 1630 as a direct dispute address does not change this. Moreover, hedging the language to "may" or something similar would not suffice to establish a direct dispute address under the FCRA and FTC regulations.

In sum, because nothing in the challenged language is "open to more than one reasonable interpretation, at least one of which is inaccurate," *Clomon*, 988 F.2d at 1319, the language is not misleading, deceptive, or false under § 1692e(10).

---

[8] Pursuant to 15 U.S.C. § 1681g, the consumer reporting agencies must disclose certain information to consumers who request a report, including a "summary of rights" that includes "the right of a consumer to dispute information in" her file under 15 U.S.C. § 1681i, and a list of federal agencies responsible for enforcing the subchapter's provisions.

10

Accordingly, the Court grants the motion to dismiss the section 1692e(10) claim.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Asset's motion to dismiss in its entirety and denies plaintiff's request for leave to amend to file a third amended complaint. Any amendment would be futile because, as a matter of law, the debt collection letter that Asset sent to plaintiff was not false, deceptive, or misleading to the least sophisticated consumer. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 22, 2014
   Central Islip, NY

\*\*\*

Plaintiff is represented by Shimshon Wexler The Law Offices of Shimshon Wexler, PC, 2250 N. Druid Hills Road, Suite 265, Atlanta, GA 30329. Defendant is represented by Jill M. Wheaton, of Dykema Gossett PLLC, 2723 South State Street, Suite 400, Ann Arbor, MI 48104, and Richard D. Lane, Jr., of Marshall, Dennehey, Warner, Coleman & Goggin, 88 Pine Street, 21st Floor, New York, NY 10005.

11